**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| TADIOS TESSEMA, INDIVIDUALLY, and as the former UNIT CHAIR of the FRIAS TRANSPORTATION BARGAINING UNIT, LOCAL 711A, UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION,<br><br>                  Plaintiff,<br><br>       v.<br><br>UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION; LEO W. GERARD; ROBERT LaVENTURE; MANUEL ARMENTA; CHRIS YOUNGMARK; ACE CAB, INC.; UNION CAB CO.; VEGAS-WESTERN CAB, INC.; A-N.L.V. CAB CO.; VIRGIN VALLEY CAB COMPANY, INC.; FRIAS TRANSPORTATION MANAGEMENT, DOES I-X and ROES XI-XX,<br><br>                  Defendants. | Case No. 2:13-cv-01782-APG-VCF<br><br>**ORDER**<br><br>(Doc. ## 31, 37, 47) |

Before me are a Motion to Dismiss (Doc. # 31) filed by defendants A-N.L.V. Cab Co., Ace Cab Inc., Frias Transportation Management, Union Cab Co., Vegas-Western Cab, Inc., and Virgin Valley Cab Company Inc.; a Motion to Expedite (Doc. # 37) filed by plaintiff Tadios Tessema; and a Motion for Partial Judgment on the Pleadings (Doc. # 47) filed by Defendant United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Worker's International Union.  Each of these motions focuses on the interpretation of NRS 614.170.  Plaintiff's interpretation would render that statute preempted by federal law.  A more narrow and non-preempted interpretation of that statute would be fatal to Plaintiff's claims.  Therefore, I grant the Defendants' motions to dismiss and for partial judgment on the pleadings,

and deny Plaintiff's motion for an expedited evidentiary hearing on the statutory interpretation issue.

**I.    BACKGROUND**

Plaintiff Tadios Tessema was an employee of defendant A-N.L.V. Cab Co. and a member of defendant United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Worker's International Union (the "Union"). In April 2012, Tessema was elected the Unit Chair of the Frias Transportation Bargaining Unit (the "Unit"), which represented the Union members employed by defendants A-N.L.V. Cab Co., Ace Cab Inc., Frias Transportation Management, Union Cab Co., Vegas-Western Cab, Inc., and Virgin Valley Cab Company Inc. (the "Employer Defendants").

The Unit and the Employer Defendants had been operating under a collective bargaining agreement ("CBA") for a number of years. In anticipation of the expiration of the CBA, a Negotiating Committee was formed to negotiate a new CBA. The committee consisted of Tessema as the Unit Chair, three other Unit members, representatives of the Employer Defendants, and Union representatives. On October 11, 2012, the Employer Defendants submitted their first "last, best and final offer," which was rejected by the Union members at an October 16, 2012 meeting for ratification.

Subsequently, the Union replaced its representative on the Negotiating Committee, removed all officers of the Unit's local chapter, and appointed another representative as Administrator over the local chapter. Negotiations for a new CBA continued, culminating in a second "last, best and final offer" on March 8, 2013. Despite his statements to the contrary, the Union representative did not submit this offer to the Negotiating Committee or to the Unit's general membership for ratification. This second "last, best and final offer" became the basis for the new CBA executed on March 11, 2013.

On March 26, 2013, the Union removed Tessema from his position as Unit Chair, allegedly because he spoke to the press about the Union's failure to submit the Employer Defendants' offer to the members for ratification, and conducted meetings with Unit bargaining

members about ratification and decertification. On March 27, 2013, Tessema and several hundred others participated in a wildcat strike to protest the passage of the CBA without ratification. A-N.L.V Cab Co. terminated Tessema for his participation in the unauthorized strike. Following an administrative action, Tessema filed this lawsuit against the Union and the Employer Defendants for violations of NRS 614.170, § 301 of the Labor Management Relations Act ("LMRA"), and §§ 101(a)(2) and 1010(a)(5) of the Labor Management Reporting and Disclosure Act ("LMRDA").

The Employer Defendants now seek dismissal of, and the Union seeks judgment on, Tessema's first two claims arising under NRS 614.170. Tessema requests an evidentiary hearing on the proper construction of that statute. No evidentiary hearing is needed to construe NRS 614.170; therefore, I deny Tessema's motion for an expedited evidentiary hearing. Additionally, Tessema's interpretation of NRS 614.170 would result in preemption of that statute by federal labor laws. And under a more narrow construction of NRS 614.170, Tessema's claims fail. Therefore, I grant the Defendants' motions.

## II. DISCUSSION

### A. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing a 12(b)(6) motion, I must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint need not contain detailed factual allegations; however, those allegations must be "more than labels and conclusions" and must "rise above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Id.*

Additionally, "because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1989).

**B. Analysis**

I first address Tessema's Motion to Expedite. Although the motion is entitled "Motion for Expedited Declaratory Relief" and specifically requests "expedited adjudication of the claims for declaratory relief," at oral argument Tessema represented the motion as a request for an evidentiary hearing on the interpretation of NRS 614.170. All of the parties admit that the proposed CBA was not submitted for ratification. Thus, there is no dispute of material fact that requires the submittal of evidence or determinations of credibility to resolve this issue. Statutory construction is a question of law. No evidentiary hearing is needed to determine the meaning of NRS 614.170. *See, e.g., Townzen v. Craven*, 444 F.2d 315, 316 (9th Cir. 1971) (court did not err in denying evidentiary hearing when issue presented was a question of law properly resolved by the district court). Moreover, fully construing NRS 614.170 is not needed in this case because, assuming Tessema's interpretation of the statute is correct, the statute would be preempted by federal law. And under a more narrow interpretation, Tessema's claims necessarily fail. Consequently, I deny Tessema's request for an evidentiary hearing.

Turning to the Defendants' motions, both motions address only Tessema's first two claims for relief arising under NRS 614.170. That statute provides:

> The draft of the proposed changes to a contract reached through collective bargaining between a labor organization and an employer must be submitted in writing by the labor organization to the organization's membership who attend the meeting for ratification before the members vote to accept or reject the contract.

NRS 614.170. Tessema's first claim requests a declaration that the Union violated that statute by failing to obtain ratification of the CBA from the general membership. His second claim requests a declaration that because the Union failed to obtain ratification as required by NRS 614.170, the March 11, 2013 CBA is invalid. These claims can succeed only if NRS 614.170 is construed as both mandating the ratification of every CBA by the general membership of a union and requiring nullification of an unratified CBA as the appropriate remedy. However, that interpretation would render the statute preempted by federal law.[1]

Under the Supremacy Clause, state laws are preempted where a federal law expressly states Congress's intent to preempt state law or impliedly expresses Congress's intent to occupy a field of law, or where the state law conflicts with federal law. *Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union Local 54*, 468 U.S. 491, 501 (1984). Such a conflict exists either where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avacado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

In the context of federal labor laws, Congress has neither expressly preempted state law nor expressed an intent to occupy the entire field. *See Garner v. Teamsters*, 346 U.S. 485, 488 (1953) ("The [NLRA] . . . leaves much to the states, though Congress has refrained from telling us how much."). Nonetheless, courts have found state labor laws preempted where they conflict with the "scheme of law, remedy, and administration" of federal laws. *San Diego Bldg. Trades*

---

[1] Tessema argues that the Employer Defendants lack standing to assert any argument based on NRS 614.170 because the statute imposes duties only on the union; thus, there is no justiciable controversy for the Employer Defendants. Tessema also argues that the Union procedurally defaulted its preemption arguments because it merely incorporated the Employer Defendants' 12(b) arguments in its 12(c) motion. Not only are these arguments wholly unsupported by any legal authority, they are nonsensical. A plaintiff may not assert a claim against a defendant via a statute and then protest the defendant's standing to argue under the same statute. Additionally, the Union's incorporation of the Employer Defendants' *argument* is not somehow an attempt to undo the filing of its Answer and submit a 12(b) motion; the argument is equally appropriate in a 12(c) motion. Finally, incorporation of another party's argument (much like joinder to a motion) is an accepted practice in appropriate situations like here, and saves the court having to read the same arguments and authorities multiple times.

*Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 243 (1959). This occurs when a state law attempts to regulate something that the federal scheme "protects, prohibits, or arguably protects or prohibits," *Wis. Dept. of Industry, Labor and Human Relations v. Gould Inc.*, 475 U.S. 282, 286 (1986), or when a state law attempts to regulate something that Congress intended "be unregulated [and] left 'to be controlled by the free play of economic forces.'" *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wis. Employment Relations Commission*, 427 U.S. 132, 140 (1976) (quoting *NLRB v. Nahs-Finch Co.*, 404 U.S. 138, 144 (1971).

At issue here is § 9 of the NLRA, which appoints a properly-elected union as the exclusive bargaining agent for the general membership.[2] 29 U.S.C. § 159(a); *Battle v. Clark Equipment Co.*, 579 F.2d 1338, 1348 (7th Cir. 1978) *overruled on other grounds by Rupe v. Spector Freight Systems, Inc.*, 679 F.2d 685, 690 n. 3 (7th Cir. 1982). Although § 9 does not specifically protect or prohibit ratification, *see Confederated Independent Unions v. Rockwell-Standard*, 465 F.2d 1137, 1140 (3d Cir. 1972), endowing the exclusive bargaining agent with sufficient authority is essential to orderly collective bargaining. *See Houchens Market of Elizabethtown, Inc. v. NLRB*, 375 F.2d 208, 212 (6th Cir. 1967) ("The purpose of the statute would be largely frustrated if the results of bargaining must be submitted to a vote of the employees, with all the misunderstandings and cross currents that would inevitably arise in an election of that sort.") A state law requiring that all negotiations of union representatives be ratified by the general membership would strip the exclusive bargaining agent of the "full power to speak on [ ] behalf" of union members and impinge the agent's bargaining capability. *See*

---

[2] Defendants also argue that § 301 of the Labor Management Relations Act ("LMRA") and sections of the Labor Management Reporting and Disclosure Act ("LMRDA") preempt the Nevada statute. However, preemption under § 301 occurs only where the claim attacking the validity of a CBA would require interpreting a CBA. *Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, General Truck Drivers, Office, Food & Warehouse Local 952 v. Am. Delivery Service Co., Inc.*, 50 F. 3d 770, 774 (9th Cir. 1995). Here, Tessema's "failure to ratify" argument does not require interpreting the terms of the CBA. The LMRDA preempts state laws regulating the internal affairs of a union. *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 193 (1967). The cases cited by Defendants address state laws regulating who may serve as a union officer or how unions may discipline their employees. While the Defendants argue that NRS 614.170 would interfere with the internal affairs of unions if it mandates ratification of all CBAs, I need not reach that issue given my disposition of the pending motions.

*Houchens*, 375 F.2d at 212. Thus, although a union member may disagree with his representatives' actions, he is nonetheless bound by them as "complete satisfaction is hardly to be expected." *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967).

Similarly, nullification of a CBA as the remedy for non-ratification would conflict with the federal scheme. Under Tessema's interpretation, NRS 614.170 imposes a duty on unions to obtain ratification. However, the remedy of invalidating the non-ratified CBA would negatively impact the employer, who owes no ratification duty to union members under Tessema's reading of the statute. Thus, if a union was required to submit a CBA for ratification to render the CBA valid, the only way an employer could protect its rights and ensure the effectiveness of the negotiated CBA would be to require that the union obtain ratification as a condition to the agreement. But courts have ruled that an employer's insistence on such a condition constitutes improper meddling in the internal affairs of unions. *Houchens*, 375 F.2d at 211. Under Tessema's reading of the statute, employers are in a "Catch-22": they cannot insist on ratification (*Id.*), but a non-ratified CBA is always susceptible to being voided at any time. Consequently, Tessema's interpretation would leave employers unable to protect their interests by ensuring the CBA is valid, and would hamper good faith negotiations.

Tessema asserts that a ratification requirement cannot be preempted by federal law because it is common practice for CBAs to be submitted to the rank and file members for ratification.[3] I reiterate that the federal law does not prohibit ratification, *Rockwell-Standard*, 465 F.2d at 1140, and submission for ratification by the general membership may be a best practice for union-member relations. Moreover, union members may insist upon ratification via the union's constitution or bylaws. However, a state interjecting itself into this issue frustrates the national scheme and regulates that which Congress intended "to be controlled by the free play of economic forces." *Machinists*, 427 U.S. at 140.

---

[3] Tessema alleges that all CBAs in the history of the Unit have been submitted for ratification with the exception of the CBA at the center of this controversy. I do not know if this is true, but that fact is irrelevant to my decision on this issue.

Tessema also argues that states should be able to impose such requirements to protect their citizens against powerful, national unions. Although such protections may be a worthy aim, state actions must not conflict with federal statutory schemes. *Hines*, 312 U.S. at 67. State-by-state regulations concerning the ratification or effectiveness of a negotiated CBA would be problematic in the context of multi-state employers and national unions.[4] Moreover, it is not as though federal law leaves local union members at the mercy of national representatives. As exclusive bargaining agents, unions still owe the members of any local bargaining unit the duty of fair representation, the breach of which subjects the union to liability. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 271(2009). Finally, union members retain the right to vote out their leaders if the members are consistently disregarded by leadership.

Consequently, under Tessema's interpretation of NRS 614.170, that statute would be preempted. Under a more narrow construction of the statute (in which ratification is not required),[5] Tessema's first two claims fail because the statute was not violated. Therefore, Tessema has failed to state a claim upon which relief may be granted, and on the face of the pleadings, the Union is entitled to judgment as a matter of law. I therefore grant the Union's Motion for Judgment on the Pleadings and the Employer Defendants' Motion to Dismiss. Tessema cannot plead additional allegations consistent with those that he previously pleaded that could cure the deficiencies in his claims arising from NRS 614.170. Therefore, Tessema's first two claims are dismissed with prejudice.

### III.     CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Tadios Tessema's Motion to Expedite (Doc. # 37) is DENIED.

---

[4] For instance, if a multi-state employer negotiated a CBA with a national union, one state's law requiring ratification of the CBA could operate as a veto over the national contract. If the union members in one state did not ratify the national CBA, should that void the CBA across the country?

[5] By way of example, the statute could be interpreted to require that *if* a ratification meeting is called, the draft of the proposed changes to the CBA must be submitted in writing to the union's members before the vote is taken.

**IT IS FURTHER ORDERED** that Defendants A-N.L.V. Cab Co., Ace Cab Inc., Frias Transportation Management, Union Cab Co., Vegas-Western Cab, Inc., and Virgin Valley Cab Company Inc.'s Motion to Dismiss (Doc. # 31) is GRANTED. Plaintiff's First and Second Claims are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Worker's International Union's Motion for Partial Judgment on the Pleadings (Doc. # 47) is GRANTED.

DATED THIS 17th day of September 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE