# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TADIOS TESSEMA, INDIVIDUALLY, and as the former UNIT CHAIR of the FRIAS TRANSPORTATION BARGAINING UNIT, LOCAL 711A; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION; LEO W. GERARD; ROBERT LAVENTURE; MANUEL ARMENTA; CHRIS YOUNGMARK; ACE CAB, INC.; UNION CAB CO.; VEGASWESTERN CAB, INC.; A-N.L.V. CAB CO.; VIRGIN VALLEY CAB COMPANY, INC.; FRIAS TRANSPORTATION MANAGEMENT; DOES 1-X AND ROES XI-XX, <br><br> Defendants. | Case No. 2:13-cv-01782-APG-VCF <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** <br><br> (ECF Nos. 108, 109, 113) |

Tadios Tessema brings this suit against his union and his former employer because he believes he was fired in violation of a collective bargaining agreement ("CBA"). Tessema drove taxis for the defendants and was a member of the defendant union. When his employer and union entered into a new CBA, Tessema and a number of other drivers were upset by its terms and decided to park their taxis and go on strike. But the CBA governing Tessema's employment expressly stated that he could not strike, and that if he was unhappy with the terms of the CBA, he needed to challenge them in the proscribed grievance process. So when Tessema refused to stop striking, his employer fired him for breaching the CBA's no-strike provision.

After my prior order dismissing one of Tessema's claims, he has two remaining: (1) a hybrid claim under the Labor-Relations Management Act ("LMRA") that his employer breached the CBA and that the union unfairly represented him, and (2) another claim under the LMRA that his union wrongly revoked his union position. The defendants move for summary judgment on both claims, and I grant their motion.

As to his first claim, Tessema has not created a triable issue of fact as to either his employer's breach of the CBA or whether his union unfairly represented him. Tessema contends that his employer could not fire him for striking because the CBA's no-strike provision applied only to the union as a whole, not to him as an individual. But the CBA's language makes clear that it applied to Tessema individually; no other interpretation makes sense. Further, the union made every effort to fairly represent Tessema, and he provides no evidence or analysis suggesting otherwise. Tessema may have had legitimate reasons to oppose the CBA, and he may not have supported its no-strike provision. But the Supreme Court has been clear: "The employee may disagree with many of the union decisions, but [he] is bound by them."[1] As to his second claim, the union offers undisputed evidence that it revoked Tessema's union position because he violated the CBA, not for any improper purpose. I therefore grant defendants' motions for summary judgment.

I. **BACKGROUND**

    A. **Tessema joins a strike against his employer.**

Tessema began driving a cab for A-N.L.V. Cab Co. ("ANLV") in 2007.[2] While working at ANLV, Tessema was a member of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Worker's International Union ("the Union") and an elected Unit Chair of his local chapter.[3]

---

[1] *N. L. R. B. v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967).

[2] ECF No. 1 at ¶5. ANLV contracted with Frias Transportation Management to assist with managing the cab drivers so Tessema sued them as well.

[3] *Id.*

In 2012, the Union and ANLV began negotiating a new CBA because the previous one was set to expire. After the Union's members rejected several proposed agreements, the Union finally agreed to one in 2013.[4] The Union chose to approve this agreement without sending it to its membership for a vote, which caused a stir among the membership.

Tessema and a number of other cab drivers told the Union that they opposed some of the CBA's new terms and that it should be renegotiated.[5] The Union responded with a letter reminding Tessema and the other drivers that the new CBA had been properly approved and that the CBA's no-strike provision meant that they would face discipline if their protests turned into a strike.[6] Despite the Union's warnings, Tessema and about 200 others rallied on the Las Vegas Strip during their work shift and picketed in front of ANLV's headquarters.[7] The Union removed Tessema from his Unit Chair position because his participation in the strike violated the CBA.[8] Tessema and many of the other strikers refused to go back to work until the CBA was renegotiated. Tessema signed a letter stating that he joined this "wild-cat strike to demand justice."[9]

**B.   The cab company fires Tessema because of his participation in the strike.**

The Union reminded the strikers that their CBA prohibited strikes, and encouraged them to return to work.[10] Tessema refused, so ANLV fired him (along with 371 others).[11] About a week later, the Union filed a grievance on his behalf, which stated that he was fired without cause. Over the following two months, the Union and ANLV worked out a settlement agreement

---

[4] *Id.*

[5] ECF No. 109-1 at 6-14. There is no question that Tessema was centrally involved in the strike. He admitted as much in deposition. Tessema said that he spoke at member meetings about the strike, that he participated in the strike, and that he actively picketed his employer. *Id.*

[6] *Id.*

[7] ECF No. 1 at ¶60-65.

[8] ECF No. 108-3 at 2.

[9] *Id.*

[10] *Id.*

[11] ECF No. 108-3 at 1.

allowing many of the drivers to return to work.[12] But ANLV opposed letting Tessema and the other instigators of the strike come back.

The Union still did not give up on Tessema's case. It arranged for Tessema to meet with counsel so that the parties could explore possible options for reaching an agreement with Tessema's employer. But Tessema refused to cooperate.[13] After he missed several meetings with counsel, the Union decided to withdraw his grievance.[14] After all, without Tessema's cooperation it would be impossible to move forward on an agreement with ANLV.

### C. The relevant terms of the CBA

The CBA states that it is an agreement between the Union and the employers (several cab companies, including ANLV).[15] The Union entered into the agreement on behalf of its members to promote "the efficiency, economy and profitability of operation, . . . uninterrupted service to the public . . . [and] the peaceful and equitable disposition of grievances."[16] In other words, the Union entered into the agreement because it recognized an orderly process for settling disputes was beneficial for its members.

In line with these principles of continuous service and efficient grievance processing, the CBA contains a "no-strike" provision—Article 35. This no-strike provision is separated into several sections, a few of which are relevant here. The first section states that "[t]he Union . . . agrees it will not call, engage in, encourage, and/or sanction any strike."[17] The third section states that "neither the Union collectively, nor any employee individually, may honor any picket line."[18]

---

[12] ECF No. 1 at ¶60; ECF No. 108-3 at 2-4.
[13] ECF No. 108-3 at 2-4.
[14] *Id.*
[15] ECF No. 1 at 41.
[16] *Id.*
[17] *Id.* at 62.
[18] *Id.*

1  Crucially, the fourth section states that "any employee who violates *any* provision of [Article 35]"
2  may be disciplined.[19]

## II. ANALYSIS

I previously granted judgment on a claim in this case.[20] Tessema's only remaining causes of action are (1) that the Union and his employer are liable for his termination under Section 301 of the LMRA, and (2) that the Union is liable for suppressing his speech in violation of Section 101 of the LMRA.

### A. Summary judgment standard

Summary judgment is appropriate when the pleadings and discovery on file, "together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[21] For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[22]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[23] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[24] She "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[25]

---

[19] *Id.* at 63 (emphasis added).

[20] *See* ECF No. 77. I also denied Tessema's motion for reconsideration on these prior dismissals. ECF No. 97.

[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[22] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[24] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

[25] *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

A party must support or refute the assertion of a fact with admissible evidence.[26] As the summary judgment procedure is the pretrial functional equivalent of a directed-verdict motion, it requires consideration of the same caliber of evidence that would be admitted at trial.[27] Thus, it is insufficient for a litigant to merely attach a document to a summary judgment motion or opposition without affirmatively demonstrating its authenticity.

**B. Tessema fails to create a triable issue as to his § 301 claim.**

A § 301 claim is often referred to as a hybrid-claim because the plaintiff must prove both that his employer and his union breached their respective duties towards him. Tessema must prove that his employer breached its duty by violating the CBA, and he must also prove that the Union breached its duty by failing to fairly represent him. Tessema fails on both prongs so his claim fails for two independent reasons.

*1. There is no genuine dispute: ANLV did not breach the CBA when it fired Tessema.*

Tessema argues that ANLV breached the CBA by firing him without cause. Although Tessema does not dispute that ANLV fired him for striking, he contends that the CBA only allowed ANLV to fire him for participating in Union-sanctioned strikes, not a wild-cat strike (a strike not officially sanctioned by the Union as a whole) like the one he was in. Tessema rests this argument on the CBA's statement in Section 1 of the no-strike provision that the "*Union . . . will not . . . strike*"—it does not say the "individual employees will not strike." Tessema believes that the CBA's use of "Union" instead of "individual employee" indicates that the parties never intended that the CBA would bar individual employees like him from striking. He points to Section 2 of the no-strike provision, the prohibition on honoring picket lines, which specifically refer to "employees individually." Tessema concludes: if the no-strike provision in Section 3 was

---

[26] Fed. R. Civ. Proc. 56(c)(1); *Orr*, 285 F.3d at 773; *Harris v. Graham Enterprises, Inc.*, 2009 WL 648899, at *2 (D. Ariz. Mar. 10, 2009).

[27] *Anderson*, 477 U.S. at 251 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983)).

generally meant to apply to individual employees, it would have referred to "individual employees" like Section 2.

But Tessema's argument is foreclosed by both the CBA's language and controlling precedent. I must interpret the CBA in light of its language and the agreement as a whole.[28] Looking to the CBA as a whole, it becomes clear that the parties intended to prevent members from striking and stopping work generally, not just strikes or stoppages the Union initiated.[29] The CBA repeatedly emphasizes that the parties entered the agreement to ensure "continuous" service of the taxis and an efficient process to handle grievances in a consistent manner. The whole point of the CBA is to provide a regimented process for handling grievances that does not interfere with the cab company's consistent service.[30] Reading the CBA to allow Union members to strike and walk off the job anytime they have a grievance—so long as the Union that represents them did not expressly *allow* the stoppage—runs counter to the manifest intent that the parties expressed throughout the CBA.[31]

---

[28] *N.L.R.B. v. S. California Edison Co.*, 646 F.2d 1352, 1365 (9th Cir. 1981). Tessema contends that this case is controlled by *Engelhard Corp. v. N.L.R.B.*, 437 F.3d 374 (3d. Cir. 1996), which holds that a waiver of an employee's right to strike must be "clear." But Tessema does not dispute that the waiver itself is clear—he disputes whether the clause distinguishes between the Union and its members.

[29] I may also look to extrinsic evidence when interpreting CBAs. *S. California Edison Co.*, 646 F.2d at 1365. If I were to do so here, all evidence points to the no-strike clause applying to individual employees—including Tessema's testimony. The Union told Tessema repeatedly, before and after the strike, that the CBA's no-strike clause applied to him. ECF No. 108-1 at 22. And Tessema stated in his deposition that he thought he would be fired for striking.

[30] "The no-strike clause is the very heart of a labor relations agreement. The primary purpose of the agreement is to prevent strikes and lockouts and to insure peaceful industrial relations." *Boeing Airplane Co. v. Aeronautical Indus. Dist. Lodge No. 751, of Intern. Ass'n of Machinists*, 91 F.Supp. 596, 608-09 (W.D. Wash. 1950).

[31] If I were to adopt Tessema's interpretation that the no-strike clause applies only to the "Union collectively"—then the CBA does not prohibit individual employees from engaging in any strike, even those sanctioned by the Union. Tessema admits this cannot be true, and his interpretation would make a number of the CBA's other clauses superfluous or absurd, such as Article 20, which expressly allows employees to be disciplined for "participation in a slowdown, work stoppage [or] strike." ECF No. 1 at 52.

Other language in the CBA likewise suggests that individual members are bound by the no-strike clause. Section 4 of the no-strike provision says that "any employee" may be disciplined who violates "any provision of this article." It goes on to say that the Union must take action against "any employee" violating provisions of the no-strike clause. The CBA thus expressly states that individual employees are prohibited from violating the provisions of the no-strike clause. If Tessema is right that the provisions of the article only apply to the Union as a whole, Section 4 would be superfluous.[32] And Article 20 of the CBA would also be superfluous, because it expressly allows the employer to discipline an employee for engaging in a "strike" or "work stoppage."[33] Finally, in the only section that Tessema points to for support—which distinguishes between the Union as a whole and individual employees—the Union is referred to as "the Union collectively." So to the extent the CBA meant to use language consistently (as Tessema suggests), if it meant to refer to the Union collectively when prohibiting strikes, it would have said "the Union *collectively* will not strike," which it did not.[34]

More importantly, the Ninth Circuit and other circuits have repeatedly rejected arguments that a CBA's no-strike language might apply only to the union as a whole and not to individual employees. Courts frequently hold that union members are bound by CBA no-strike clauses.[35] Tessema does not point to a single case in any jurisdiction holding that individual members are

---

[32] *Warrington v. Empey*, 95 Nev. 136, 138 (1979). Similarly, Section 5 would be superfluous because it refers to protections individual employees have when they violate the no-strike clause individually. ECF No. 1 at 62; *see also Warrington*, 95 Nev. at 138.

[33] ECF No. 1 at 52-53.

[34] The CBA likely distinguished between the Union as a whole and individual employees because it was addressing employees' participation in sympathy picket-lines on their own time (not a work-stoppage or strike related to their own employer). In other words, the picket-line section bars individual employees from honoring picket-lines on their own time, unrelated to their membership in the Union or their work for ANLV.

[35] *See, e.g., Sinclair Oil Corp. v. Oil, Chem. & Atomic Workers Int'l Union,* 452 F.2d 49, 51–52 (7th Cir. 1971) ("Union members are bound by a no-strike clause."); *Kellogg Co. v. N.L.R.B.*, 457 F.2d 519, 523 (6th Cir. 1972) (waiver of the right to honor stranger picket lines binds all members of the bargaining unit); *see generally Republic Steel Corp. v. Maddox,* 379 U.S. 650, 658-59 (1965).

not bound by a CBA's no-strike clause like this.  Indeed, the Ninth Circuit has outright rejected a nearly-identical argument to the one Tessema makes here.[36]

These courts point out that a union's rights are not generally divisible from its members' rights—after all, a union is nothing more than the collective will of its members.[37]  Thus if the union has collectively given up its right to strike, so have its members.  For example, the Seventh Circuit rejected an argument that individual employees were not bound by a CBA that barred "the Union" from striking.[38]  The CBA in that case stated that the "Union further agrees that during the term of this Agreement there shall be no strikes or work stoppages"—there was no mention of the individual employees being bound.[39]  But the court nevertheless reasoned that individual members were bound by the no-strike clause: "They were in the bargaining unit covered by the collective agreement," and that collective bargaining unit negotiated the clause as "[the members'] agent."[40]

Because Tessema concedes that he engaged in a strike, and because I hold that the CBA prohibited him from doing so, ANLV did not breach the CBA in firing him.[41]

---

[36] "We reject the General Counsel's suggestion that the no-strike language addressed only union-sponsored activity and left individual employees free to engage in strike activity." *N.L.R.B. v. S. California Edison Co.*, 646 F.2d 1352, 1367 (9th Cir. 1981); *see also Children's Hosp. Med. Ctr. of N. California v. California Nurse's Ass'n*, No. C-99-0608-VRW, 2000 WL 291184, at *2 (N.D. Cal. Mar. 3, 2000) (noting absence of caselaw holding that "the strike rights of the union, not the employees, [could be] waived").

[37] *See, e.g.*, *Sinclair Ref. Co. v. Atkinson*, 290 F.2d 312, 317 (7th Cir. 1961), aff'd, 370 U.S. 195 (1962).

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] Tessema criticizes the defendants' "banks of lawyers" for treating the Union as "part and parcel with its membership." ECF No. 110 at 5-6.  But that is precisely what a union is: its members.  The only case Tessema cites in his briefing that is somewhat on point, *Silver State Disposal Serv., Inc.*, 326 NLRB 84 (1998), is unhelpful.  There, the NLRB was interpreting a no-strike clause that stated a Union may not "call" or "condone" a strike—it did not even prohibit engaging in a strike. *Id.* at 86.

                    *2. There is no genuine dispute: the Union fairly represented Tessema.*

Because Tessema fails to create a triable issue about his employer's breach of the CBA, his § 301 claim fails. But even if he had shown a breach, Tessema has not created a triable issue about whether the Union fairly represented him.

Tessema argues that the Union breached its duty of fair representation by ultimately withdrawing the grievance it had filed on his behalf. Tessema cannot prevail on his unfair representation claim by showing that the Union made a mistake in deciding to withdraw this grievance; instead, he must meet a high burden of proving that the Union's motivation was arbitrary, "discriminatory, or in bad faith."[42] There is no evidence that the Union acted arbitrarily or in bad faith towards Tessema—indeed, the evidence shows the opposite. The Union filed a grievance on Tessema's behalf, despite that Tessema refused to cooperate with it. The Union then pursued that grievance for months, and it only stopped when Tessema failed to participate in the process. The Union had a plausible reason for believing that the grievance would have lost anyway: the CBA expressly prohibited strikes and Tessema engaged in one. Even if the Union were mistaken in its interpretation of the no-strike clause, its interpretation was reasonable. Tessema cites no other evidence that might create a triable issue as to his Union's motivation for dropping his grievance.

Tessema's claim under § 301 thus fails because he has failed to create a genuine issue of fact under either of the claim's prongs.

**C. Tessema's § 101 claim also fails.**

Tessema's final claim is that the Union violated his right to "speak" under LMRA § 101 by removing Tessema from his Unit Chair position in retaliation for statements that Tessema made against the Union. To succeed on this claim, Tessema must prove that "(1) he exercised the right to oppose union policies; (2) he was subjected to retaliatory action; and (3) the

---

[42] *Moore v. Bechtel Power Corp.*, 840 F.2d 634, 636 (9th Cir. 1988).

retaliatory action was a direct result of his decision to express disagreement with the union's leadership."[43]

Tessema fails to create a triable issue as to the third prong of this test: he has not shown that the Union removed him from his position because of his disagreements with the Union.[44] The Union contends that it removed Tessema because he exposed the Union to liability by striking. And the CBA's terms support the Union's position: the no-strike provision states that if any Union "representative" participates in a strike, the Union can be held liable.

Tessema's only responses are that he was not violating the CBA by striking (which I have already rejected) and that he was not the Union's representative so he could not have exposed the Union to liability under the no-strike clause.[45] Tessema cites no admissible evidence to rebut the Union's motion, and in any event it is clear that Tessema was the Union's representative for purposes of the CBA. Tessema's position as steward and Unit Chair were both positions requiring him to represent the Union. The Unit Chair position was "the highest ranking leadership position" in his unit.[46]

Tessema otherwise cites no admissible evidence creating a triable issue of fact as to the Union's motivation for removing him from his position. I therefore grant summary judgment to the Union on this claim.

/ / / /

/ / / /

/ / / /

/ / / /

---

[43] *Casumpang v. Int'l Longshoremen's & Warehousemen's Union, Local 142*, 269 F.3d 1042, 1058 (9th Cir. 2001) (quotation omitted).

[44] I thus need not reach the question whether he made statements opposing the Union.

[45] Tessema probably does not even create a triable issue that the Union was even partially motivated by his statements, but even if he had, the fact that the Union needed to remove him from his position to comply with the CBA and avoid civil liability makes any other motive immaterial. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 242 (1989).

[46] ECF No. 1 at 4.

### D. Defendants' motion for sanctions

The Union moves for sanctions based on Tessema's failure to meaningfully prosecute this case and the fact that the Union believes this case is ultimately frivolous. I have broad authority to impose sanctions for violations of Rule 11.[47]

Although I am granting defendants' motions for summary judgment, Tessema's claims were far from frivolous. The CBA did not explicitly state that individual employees were bound by the no-strike clause, and there was at least some support for his argument that the Union took away his Chair position because of statements he made opposing the Union. The Union has not otherwise shown that Tessema brought this case with an "improper purpose."[48] And to the extent that the Union moved for sanctions based on Tessema's alleged discovery violations, it appears to have withdrawn that claim.[49] Even if it had not, the Union has not shown sanctions are warranted.

### III. CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motions for summary judgment **(ECF Nos. 108, 109) are GRANTED**. The defendants' motion for sanctions **(ECF No. 113) is DENIED**. The clerk of the court shall enter judgment in favor of the defendants accordingly.

DATED this 8th day of February, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[47] *See Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

[48] Fed. R. Civ. P. 11.

[49] The Union states that its sanctions motion is based on the "Complaint" and that Tessema's discovery violations are raised as further proof that he brought this case with an improper purpose.